SYLVESTER COSTIGAN AND SUSAN R. HIS WIFE AND OTHERS
*vs.* ROBERT SEWALL.—*December,* 1847.

*S.* agreed to sell *D.* certain lands in *Maryland. D.* agreed to give $9,000 for the same, payable in an order on *V.* now in *Mississippi,* to pay him ( *S.* ) the said amount, by either buying the negroes of *D.* himself, now in his ( *V's* ) possession, or selling to an amount equal to that sum, or selling such thereof as *V.* can best spare on a credit, if most conducive to *D's* interest, and pass the notes received therefor to *S.* adding to the same the discount thereon, so as to make it equal to $9,000 cash. Upon the receipt of the said notes, *S.* to convey to *D. S.* afterwards purchased of *D's* agent certain of the slaves, for $4,655 55 in *Mis:* bank paper, which was, in fact, of less value than par ; and also received a note from her agent, payable in the same bank paper, of less value than par. *Held :*

1st. There was nothing in the contract which indicated that *D.* was to allow any discount to *S.* except on credit notes taken on the sales of the slaves, and that discount was nothing more than interest on such notes during the periods of their delayed payments.

2d. If *S.* agreed to receive the bank notes in payment of his claim, without any understanding with *D.* that a discount should be allowed him, he receives such notes as a substitute for specie, and they are a payment for their nominal value.

3d. This contract does not require the consideration to be paid in *Mississippi,* or in any particular place. This mode of payment was for the benefit of the vendee.

4th. If the agent in *Mis:* had agreed to purchase the negroes, as provided for by the contract; or, if they had been in *Mis:* sold to a resident of any other State in the *Union,* and the note for the purchase money had been accepted by *S.* *for delay of payment,* it would have borne the rate of interest of *Mis:*—that being the place of the contract.

5th. The contract in this case does not specify any place of payment. It is, therefore, to be considered as a contract to be enforced in *Maryland,* and liable to the rate of interest here.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 4th November, 1840, by the appellee, and alleged that on the 29th September, 1836, he entered into an agreement with *Susan R. Dorsey,* (now *Costigan,* ) for the sale of certain lands, and crops growing thereon, except fodder, for $9,000, payable in an order on *Vernon Dorsey,* of *Mississippi,* to pay the appellee the amount, by either buying himself negroes of the said *Susan,* now

in said *Vernon's* possession, or selling to an amount equal to that sum; or selling such thereof as he can best spare, on a credit, if most conducive to her interest, and pass the notes received therefor to the said *Sewall,* adding to the same the discount thereon, so as to make it equal to $9,000 cash; the said sale and instructions to be consummated as soon as his crop of cotton is secured, or at an earlier day, if the said *Vernon Dorsey* and the said *Sewall* shall deem it most convenient, with a due regard to a fair sale; and upon receipt of the said notes, the said *Sewall* will direct a letter to his agent to deliver a deed to the said *Susan.* This contract was accompanied with a letter from the said *Susan* to her brother, *Vernon Dorsey,* to carry the same into effect. The bill then alleged *Vernon's* refusal, from that to the time of his death, to execute the contract; that in the month of April, 1838, the appellee purchased from *W. H. Lake,* agent of *Susan,* for the purpose of said contract, certain slaves of the said *Susan,* for the sum of $4,655 55, in *Mississippi* bank paper, which was of the value of $3,724 44, legal currency; that about the same time he received from the agent of the said *Susan* the note or obligation of *Puckett & Lake,* for the sum of $3,100, payable in *Mississippi* bank paper, which was equal in value and realized to the appellee no more than the sum of $2,480 in legal currency, and that the aforesaid payments are the only ones he has received. The bill alleged that inasmuch as the aforesaid payments were to have been made in *Mississippi,* he is entitled to interest for default in payment there, according to the rate of interest usually chargeable in said State, which is after the rate of *nine per centum,* so that there will now remain due to appellee $4,500 of purchase money, &c.

The answer of *Costigan* and wife admitted the contract with appellee, the instructions given to *V. D.* and his refusal to execute the same; the sale of a part of said *Susan's* negroes; that complainant was a purchaser thereof; it then denied all liability for difference in value between *Mississippi* bank paper and legal currency, and alleged that the rights of the parties were to be adjusted according to the true spirit of the original

contract. The answer set up other defences not adjudged by this court.

Some proof was taken which is adverted to in the opinion of this court, and the cause was referred to the auditor to state accounts between the parties.

That officer reported two accounts.

In account A, he allowed only the credits mentioned in the bill of complaint, as none other had been proved; and the discount there claimed for the bank paper, in which the several sums of money constituting those credits were received is less than that proved.

In account B, the auditor made a statement of complainant's claim, rating the discount at the average of the testimony in relation to the several kinds of *Mississippi* bank paper—it not appearing in what kinds the payments were made—by which it appears that the claim stated in the bill is less than that established by the proof by $876. As the contract was to be executed in *Mississippi*, the auditor charged interest at *eight* per centum, the rate allowed in that State, as appears by the proof.

After exceptions, the Chancellor (BLAND) confirmed account A, and the defendants appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MARTIN, J.

By R. JOHNSON and MAYER for the appellants, and

By ALEXANDER and CAUSIN for the appellees.

DORSEY, J., delivered the opinion of this court.

The first question to be determined is, whether the payments made to the appellee are to be credited at their nominal amount, or for such sum as that amount of *Mississippi* bank notes would have purchased in specie.

There is nothing in the contract between the parties which indicates an understanding between them, that *Susan R. Dorsey* was to allow any discount to the appellee, except on credit notes, taken on the sales of her negroes; and that

discount was nothing more than interest on such notes during the periods of their delayed payments. If then the appellee agreed to receive *Mississippi* bank notes in payment of his claim, without any understanding, express or implied, between him and his debtor, that a discount should be allowed him, he receives such notes as a substitute for specie ; and they are a payment for their nominal value. He was not bound under his contract to accept of any notes taken for negroes sold, unless their payment could have been enforced in specie. And the proof shows that he was perfectly aware of his rights at the time he assented to receive the payments in *Mississippi* bank notes, or their equivalent in negroes. He is therefore entitled to no allowance for the depreciation of such bank paper, and in making such discount the auditor's account is erroneous.

The only remaining question is, should interest on the $9,000 be calculated according to the rate of interest payable in *Mississippi* or in *Maryland?* The contract was made in *Maryland*, and shows that *Robert Sewall*, was a resident thereof, as was *Susan R. Dorsey.* There is nothing in the contract to excite even a suspicion that the stipulation, as to the mode of payment, was designed for the benefit or convenience of any body, except *Susan R. Dorsey.* It does not, as has been asserted, require the $9,000 to be paid in *Mississippi*, or in any particular place. If *Vernon H. Dorsey* had agreed to purchase the negroes as provided for by the contract, or if they had been in *Mississippi*, sold to a resident of any other State in the Union, and the note for the purchase money had been accepted by *Sewall* for delay of payment, it would have borne the rate of interest of *Mississippi*, that being the *loci contractus.* But it would not thence have followed that it was payable there. A demand or tender of payment might be lawfully made in any part of the world, wherever the plaintiff and defendant might be. Neither the note thus taken, nor the contract before us, specifies any "*locus solvendi.*" Upon the refusal of *Vernon H. Dorsey* to obey the directions of his sister, a right of action accrued to *Robert*

*Sewall* against her.  She became responsible for the breach of a *Maryland* contract—was chargeable with interest accordingly,—and no subsequent payments made to *Robert Sewall* in *Mississippi*, can, in any wise, change the principles of her responsibilities to him.  It follows, therefore, that on this ground also, the Chancellor erred in overruling the appellant's exceptions to the auditor's report, and in re-affirming, by his order of the 11th October, 1845, his order of the 29th July, of the same year.

·This court will sign a decree reversing the orders of the Chancellor, appealed from, and remanding the cause to the Court of Chancery for further proceedings therein, &c.

**DECREE REVERSED AND CAUSE REMANDED.**