## OSMUN LATROBE AND ROSS W. WHISTLER, EXECUTORS AND TRUSTEES OF DE WITT CLINTON WINANS vs. WALTER WINANS AND LOUIS WILLIAM WINANS, EXECUTORS OF WILLIAM L. WINANS—WALTER WINANS AND LOUIS WILLIAM WINANS, EXECUTORS OF WILLIAM L. WINANS vs. OSMUN LATROBE AND ROSS W. WHISTLER EXECUTORS AND TRUSTEES OF DE WITT CLINTON WINANS.

*Vendor and Purchaser—Place of Making Contract—Delay in Completing Contract for Sale of Land—Interest on Purchase Money.*

When an offer to purchase land situated in this State is made by a letter posted in England, and the acceptance is posted here, the contract is made in this State, and is to be construed according to its laws, although the offer prescribes that the deeds shall be satisfactory to the purchaser living in England.

A letter offering to purchase certain land provided that the conveyances should be executed within six months thereafter, and the pur-

chase money paid "at the time of delivery to me, and my acceptance as satisfactory" of the documents required for the sale. This offer was duly accepted and drafts of deeds, following a form supplied by the purchaser, were sent to him. He waived any right to demand the submission to him for examination of executed deeds and he delayed for nearly two years to mention in what particulars the drafts submitted were not satisfactory, promising from time to time to examine them. *Held*,

1st. That upon the receipt of the drafts of the deeds by the purchaser, he was bound to signify before the expiration of the six months limit his satisfaction or dissatisfaction therewith, so as to enable the sellers, either to execute the deeds submitted, if satisfactory, or to correct any errors pointed out by him, and to execute corrected deeds within that time.

2nd. That since the delay in completing the contract was attributable to the purchaser, he is liable to pay interest, at the legal rate on the purchase money, from the expiration of the six months when the sellers were ready and offered to execute the deeds, together with taxes on the property, which was unimproved land.

Cross-appeals from a decree of the Circuit Court of Baltimore City (Wickes, J.)

The record in this case brings up cross-appeals from a decree of the Circuit Court of Baltimore City, and although but a single question is presented, viz., the liability of the estate of William L. Winans to the estate of DeWitt Clinton Winans for interest on the purchase money of certain real estate in Baltimore City, and certain letters-patent for ocean steamers. The correspondence, which resulted in the contract, and which grew out of the efforts to secure its satisfactory performance, is so voluminous, and so extraordinarily minute in detail, and critical in its character, on the part of the vendee, though conducted in the most apparent and complete good faith, that a somewhat lengthy statement of the facts is indispensible to a proper understanding of the disposition of the case, and the opinion to be rendered will therefore be prefaced by the following statement:

The plaintiffs below were Osmun Latrobe and Ross W. Whistler, executors and trustees of DeWitt Clinton Winans,

deceased, under whose will the entire income of the estate was divided between his widow, Matilda F. Winans, and Ellen Barbara Williams, during their joint lives; the whole income to go to Mrs. Williams if she should survive Mrs. Winans, and after the death of both, the entire property subject to an annuity of £500 sterling to go to Walter Scott Winans and his son, Thomas Winans.   The executors and trustees were authorized by the will to sell the whole, or any part of the estate, by public auction or private treaty, in their discretion, and to invest the proceeds of sale. Among the property so held by them, was an undivided one-tenth interest in a large tract of unimproved and unproductive real estate in Baltimore City, known as the Ferry Bar property, and an undivided one-tenth interest in letters-patent of the U. S., for spindle-shaped ocean steamers. Eight-tenths of both these properties were owned by Wm. L. Winans, a resident of London, England, and the remaining one-tenth by his brother, Walter S. Winans.   The taxes upon the real estate were never less than $6,000, and the income never adequate for their payment.   On the 22nd of January, 1895, the executors and trustees filed a bill in the Circuit Court of Baltimore City against all the parties interested in the trust-estate, praying the Court to assume jurisdiction thereof, and on Dec. 7th, 1895, a decree was passed accordingly.

Mrs. Williams had instructed her counsel to take proceedings for the partition of the Ferry Bar property, in order that her interest therein, when thus set apart, might be sold and made productive of income, and they were about to do so when negotiations were opened by Wm. L. Winans with the executors and trustees of DeWitt Clinton Winans for the purchase of the one undivided tenth interest therein, and in the letters-patent mentioned, and in order to facilitate these negotiations, Mrs. Williams forbore to press her proceedings.   On June 27th, 1895, Wm. L. Winans, by letter of that date, submitted to the executors and trustees an offer for the purchase of the above-described one-tenth in-

terest in the Ferry Bar property and in the letters-patent mentioned. This proposition covered nearly two thousand words and was burdened with much unnecessary detail and repetition, emphasizing the extreme care and jealousy with which he reserved to himself the right to have everything made *satisfactory* to himself, before he should become bound to accept the property or to pay the purchase money. The proposition is divided into five formal heads.

The first head describes the real estate in which he proposed to purchase a one-tenth interest.

The second head describes the patents in which he proposed to purchase a similar interest.

The third head states the price or sum offered for these interests, *viz.*, $126,000.

The fourth head is in part as follows : " I leave my offer as made under heads 1, 2, 3, 4 and 5 of this letter   *   *   * open for acceptance in writing by you, the executors and trustees of the said estate, without any change, addition, or omission until August 31st, 1895, and if on or before that date I receive from you at my office, 12 Beaufort Gardens, London, S. W., what I may find a proper legal acceptance by you in writing (an acceptance by telegram I will not consider sufficient) of my offer to you, as made under heads 1, 2, 3, 4 and 5 of this letter, then your said acceptance, together with my said offer by this letter are to be considered as a binding agreement between you, the executors and trustees of DeWitt Clinton Winans, and myself, for the said purchase by me and sale by you ; and the said sale, giving up, and conveyance of the said one-tenth share of the Ferry Bar property, and the said assignment and transfer of the said one-tenth share in patents, expenses and profits, and all else concerning vessels, shall be executed and completed by you, and all others necessary on the part of the estate of DeWitt Clinton Winans, as stipulated by me in this letter, in the proper and fully binding legal manner, and *to my satisfaction*, within six months thereafter ; and the consideration of $126,000 which I have by this

letter offered to pay for the said two shares of one-tenth each, shall be paid to you or to your order, at the time of delivery to me, and my acceptance as satisfactory, of the documents which are required for the completion of the said sale, giving up, conveyance, and assignment to me in a proper and fully binding legal manner, and to my satisfaction, after you have also done, and caused to be done, everything else which may be necessary for completing the sale and purchase in accordance with my offer by this letter in a fully binding legal manner and to my satisfaction."

The fifth head is in part as follows : " The offer made by this letter under heads 1, 2, 3 and 4, above and under this head 5, is made with the view, amongst other considerations, of preventing any proceedings in Court or elsewhere concerning a partition or division of the Ferry Bar property, or the sale of all or any part of it, or for anything else at variance with my offer by this letter. Under these circumstances, if at any time before the full and final completion of the said purchase and sale in accordance with the terms and conditions of my offer in this letter, including the payment from me to you of the said $126,000, there are any proceedings in Court or elsewhere by Mrs. DeWitt Clinton Winans, by Mrs. Ellen Barbara Williams, or by any one receiving power from either one, or both of them, or by any other person or persons, concerning such sale or partition, or for anything else at variance with my offer by this letter, then I hereby reserve the right and power to stop and terminate, if I choose, at any time thereafter, all the proceedings for the said purchase by me and sale by you, and the said stopping and termination by me, shall have the effect of rendering all that may have been previously done by me, by and according to this letter, and by you in regard to this offer, null and void, and not binding on me or yourselves or causing any liability on my part to you or anyone else."

One of the conditions under heads 1 and 2 was that the property should be conveyed and assigned free from all

incumbrances whatever. This offer was accompanied by a letter from Walter S. Winans to the executors and trustees, also dated June 27th, 1895, stating that as reversioner under DeWitt Clinton Winans' will in the one-tenth interest in Ferry Bar, and as owner in his own right of another one-tenth interest therein, he approved of said sale, and agreed to unite in its completion. On July 29th, 1895, the executors and trustees, by letter of that date, wrote W. L. Winans : " We accept your said offer, and sell unto you all the rights, title, interest and claims of the estate of De-Witt Clinton Winans in and to said Ferry Bar property and said patents, at and for the price named and upon the terms and conditions of your offer of June 27, 1895."

This acceptance was received by W. L. Winans August 12, 1895. On September 6, 1895, the executors and trustees wrote Wm. L. Winans requesting him to notify them, and his counsel, Mr. Lanahan, if he was satisfied with their acceptance of his offer, that they might report the transaction to the proper Court, and suggesting that as some time might be required to arrange the form of the deeds required, to his satisfaction, that it might be well for him to authorize some one to prepare these deeds. This letter was received by Mr. Winans September 15, 1895, and on November 12th, 1895, he wrote Osmun Latrobe, one of the executors, stating that he found their letter of July 29, 1895, a sufficiently exact compliance with his offer, but that as he was advised by them, and also by Mr. Lanahan, that ratification by the Court was necessary, he desired an official certificate of ratification in order to know whether he should find the acceptance a proper legal one, satisfactory to him, and also authorized them, if they so desired, to commence drafting the documents necessary to pass title, and to submit them to Mr. Lanahan for examination, and then to him for decision whether they were satisfactory ; at the same time calling their attention to the language of their acceptance importing an actual sale, and stating that his offer was for a future purchase and sale which could

not be completed until all the stipulations of his offer were fulfilled. Upon the receipt of this letter the executors, on December 11, 1895, reported the agreement for sale, and prayed for the ratification of their action and for an order to sell and convey the property to W. L. Winans in a proper and legal manner and satisfactory to him, and on the same day a decree was passed ratifying the action of the executors in accepting the offer, and directing them to execute deeds for the land and patents in a proper legal manner satisfactory to Wm. L. Winans, and to deliver the same upon payment of said $126,000.

All the parties in interest, by their counsel, assented to this decree. On February 14, 1896, Wm. L. Winans wrote Mr. Lanahan that he had received on January 6th certificate of ratification of sale and drafts of deed and assignment from the executors to him, also an abstract of the title to the land; that he was having these papers examined and would write him and the executors concerning them after this examination. He also referred to Mr. Lanahan's suggestion that he remit the purchase money to Alex. Brown & Sons, subject to the joint order of Mr. Lanahan and the trustees, that they might pay thereout certain small claims at the time of paying the purchase money. over, and he reminded Mr. Lanahan that his offer required all incumbrances to be removed before payment of the purchase money, and he declined to waive or modify this requirement.

Upon receipt of this letter the executors at once removed all incumbrances and Mr. Lanahan at once so informed Mr. Winans, Feby. 25th, 1896. On Feby. 11, 1896, Mr. Winans wrote the executors substantially as in his letter of Feby. 14, 1896, to Mr. Lanahan, and stated that while he desired Mr. Lanahan's advice, he reserved to himself the right to decide every question as it arose.

He also said in this letter that as payment was to be made upon the delivery to, and acceptance by him of deeds, and as he was in England such delivery and acceptance was to be made in England, while the purchase money was to be

paid to them or to their order, without stating where; that he considered it right, according to his offer, that they should order to whom in London the purchase money should be paid for them on acceptance of deeds.

No reply was ever made by Mr. Winans to the letter of Feby. 25th, 1896, from Mr. Lanahan.

On Feby. 20, 1896, the executors wrote Mr. Winans that everything had been done to carry out his wishes and that if he would return the drafts of deeds which had been sent him for examination, they would be executed and tendered for his acceptance.    Osmun Latrobe wrote Mr. Winans from time to time, calling attention to the fact that they were waiting on him.    On Sept. 20, 1896, Mr. Winans cabled Osmun Latrobe, then in New York, that he had received his letter of July 30, 1896, and his telegram of Sept. 21st, about Ferry Bar ; that he had been unwell and much occupied with other business requiring immediate attention for some months past ; that he was then considering the deed and assignment sent him ; that he thought some changes desirable in them of which he would inform him as soon as he conveniently could, and requested him to communicate this to Mr. Stewart Brown (the counsel of the life-tenants), to show him that he was in earnest, and that the matter was not dead.

In the spring of 1897 the trustees stated an account of the rents of this property, and JUDGE DENNIS, who was then sitting in that Court, asked why the trustees had not completed the sale which had been ratified December 11, 1895. They explained the cause of the delay as stated above, and the Court stated that unless something was done at once a resale at Mr. Winans' risk would be ordered within 30 days.    This was on April 7th cabled to Mr. Winans, and on April 12th he cabled in reply that a binding agreement for the purchase had been made, though *he claimed* no day was fixed for the completion of the sale ; that the drafts of deeds sent him for examination were not fully satisfactory, and that in consequence of illness he had not yet returned

the drafts for such alterations as would be satisfactory, but that his health was improved, and he thought all could be completed by June or July, 1897. He denied the right or power either of the executors to make, or the Court to order a resale, and notified them he should resist any such order or sale and that he should hold them liable for all damages resulting from such attempt to resell.

On May 27th, 1897, Mr. Winans wrote the executors a long letter, forwarding them drafts of deeds, prepared by him, or under his direction, such as he stated, he then thought, if executed, would be satisfactory to him ; but he asserted that no person nor the Court could decide for him whether the deeds would be satisfactory to him, and that he would authorize no one to determine this for him, nor would he authorize anyone to make for him the affidavit required to the assignment of the patents. A comparison of the drafts of deeds sent him by the executors with those sent by him to them, discloses that the only errors in the drafts sent by the executors were errors made by the agent of Mr. Winans in preparing the forms originally sent by him to Mr. Lanahan, and by Mr. Lanahan delivered to the executors to be followed by them, in following which they necessarily repeated such errors. Aside from the correction of these errors in the final drafts, no alterations were made by Mr. Winans, and it may be assumed as a fact, that but for the position taken by the Court, in requiring the completion of the contract or a resale at Mr. Winans' risk, the whole matter would have indefinitely awaited the convenience of Mr. Winans.

The corrected deed and assignment were executed June 15, 1897, and were delivered to Brown, Shipley & Co., in London, for Mr. Winans' examination, June 24, 1897. He died June 22, 1897, and the deeds remained in the possession of Brown, Shipley & Co. from June 24, 1897, to March 11, 1898, when W. L. Winans' executors paid the $126,000, and the question of interest was by agreement of parties reserved for the decision of the Court.

On June 16, 1897, the executors had filed a petition in the case, stating that the deeds were executed and ready for delivery for final examination, but that the life-tenants had notified them they claimed interest from August 31, 1895, and the executors prayed that they be authorized to deliver the deeds upon payment of the principal, provided Mr. Winans consented that his liability for interest should be reserved for decision by the Court, and an order to that effect was passed, and on March 14th, 1898, the executors of Mr. Winans filed their assent to this order. On April 20th, 1898, Mrs. Williams filed a petition in the case alleging that as one of the life-tenants she was vitally interested in the sale in order that the purchase money might be invested and made productive of income; that she had, before Mr. Winans' offer, directed her counsel to take proceedings for a sale or partition of Ferry Bar, but had foreborne to press the proceedings, pending Mr. Winans' negotiations, and had consented to the sale on his terms, though she regarded the valuation as a low one ; that she had expected, as she had a right to expect, a consummation of the sale within six months from August 31, 1895, but that Mr. Winans, while always claiming a binding agreement for sale, had from time to time unreasonably and unjustly delayed its consummation, claiming that the period of consummation was subject to his convenience and satisfaction, and she prayed for an order directing the executors to take immediate steps to enforce payment of interest on the purchase money from March 1st, 1896, and all sums paid for taxes on the property since that date by the executors; the executors answered this petition May 31, 1898, admitting its allegations and declaring their readiness to take any proceedings ordered. With this answer they submitted a communication from Mr. Lanahan and General F. C. Latrobe, counsel for W. L. Winans' executors, denying all liability for interest or taxes, but offering by way of compromise, interest at the rate of four per cent. on $126,000 from June 24, 1897, the date of delivery of executed deeds to

Brown, Shipley & Co., to March 14th, 1898, the date on which the $126,000 had been paid.    To this answer Mrs. Williams filed exceptions, and on July 16, 1898, the Court passed an order directing the executors to take such proceedings as might be necessary to enforce payment of such interest and taxes as should be found to be due by reason of the deferment by Mr. Winans of payment of the purchase money, and the order directed that interest and taxes should be claimed from March 1st, 1896.

The executors of W. L. Winans appeared and answered, denying again all liability for interest or taxes, and alleging that until actual delivery of executed deeds found satisfactory to Mr. Winans, the principal was not payable and therefore no interest could be demandable ; contending also that the Court was without jurisdiction to pass upon the reasonableness or unreasonableness of the time consumed in the examination of the drafts of deeds submitted for examination, and of the executed deeds subsequently submitted for the same purpose.

Testimony was taken resulting in the establishment of the facts above recited.    The case was argued by counsel, and on January 24, 1899, the Court decreed that the executors of Wm. L. Winans pay to the executors of DeWitt Clinton Winans $5,523, being interest on $126,000 at six per cent. per annum from June 24, 1897, the date of the delivery of the executed deeds in London, to March 14, 1898, the date of payment of the $126,000.    From this decree both parties have appealed.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Ferdinand C. Latrobe* and *Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the executors of W. L. Winans.

*Stewart Brown*, for the life-tenants under the will of DeW. C. Winans.

*John E. Semmes*, for the executors and trustees of DeW. Winans' estate.

PEARCE, J., after stating the facts as above, delivered the opinion of the Court.

The first contention of the defendants, the executors of Wm. L. Winans, is, that this contract having been made in England for performance there, and having been in fact carried out in that country, the *lex loci contractus* must govern, and that by the common law of England no interest can be recovered in an action upon such a contract, not providing for interest, and therefore this decree, which allows some interest, is erroneous and should be reversed.

We do not, however, regard this contract as one made, or to be performed, in England, and to be governed by the law of that country. The subject-matter relates to real estate in Maryland, and the general rule in such cases is that the *lex loci rei sitæ* governs. 2 *Parsons on Contracts*, 8th ed. p. 686.

Upon the mailing by plaintiffs of their acceptance of Wm. L. Winans' offer, the bargain was complete, subject only to the contingency that the acceptance reached him on or before August 31st, 1895. It was not in his power, after plaintiffs' acceptance was mailed, and before that date, to withdraw his offer. *Wheat* v. *Cross*, 31 Md. 103 ; *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 Howard, 390.

When notice of acceptance reached Wm. L. Winans it related back to the date of acceptance. The contract was thus actually made in Maryland, the offer having been both received there and accepted there, within the time prescribed for its acceptance. The contract, it is true, required the deeds, when executed, to be submitted to Wm. L. Winans, in England, for his approval and acceptance, but it named no *locus solvendi*, and the general rule therefore applied, requiring the debtor to seek the creditor for payment. The case of *Costigan* v. *Sewell*, 6 Gill, 232, cited by defendants in support of their contention, we regard as sustaining the

view we here express, and not the contrary. We have no occasion, therefore, to consider the English authorities relied on by defendants, to show that the allowance of any interest was erroneous. Our own law must determine whether any interest, and, if so, what, is recoverable. The doctrine of our Courts is that this subject is not susceptible of any fixed or general rule of law, since no two cases present the same aspect, but each must depend upon its own peculiar circumstances. There are cases, other than those of bonds, in which interest is recoverable as of right, such as on a contract in writing to pay money on a day certain; and even where not recoverable as of right, its allowance is in the discretion of the jury, according to the equity and justice appearing between the parties on all of the circumstances disclosed at the trial. *Newson* v. *Douglas*, 7 H. & J. 454; *Frank* v. *Morrison*, 55 Md. 408. And in the matter of allowing interest, equity follows the law. *Hammond* v. *Hammond*, 2 Bland, 370, Brantly's note *m.*

The next contention of defendants, and that upon which most reliance was placed, both in the oral argument and in the brief of their counsel, was, that by the express terms and conditions of the contract, the purchase money should not be payable until a deed of the land, and an assignment of the patents should be *executed* by plaintiffs, and be submitted to Wm. L. Winans, in England, and be by him accepted as satisfactory; and that as, in fact, such *executed* deeds were not submitted to him in his lifetime, *he* was never in default; and that as there is no evidence to show that his executors did not, within a reasonable time after the delivery of executed deeds to Brown, Shipley & Co., examine and approve the same and pay the purchase money, they were not in default, and hence no recovery of interest can be had against the estate of Wm. L. Winans. This defence, both by reason of the authority cited in its support, and in deference to the opinion of the learned and careful Judge who sustained the defence so far as to deny

any default on the part of Wm. L. Winans, in his lifetime, requires careful consideration.

The defendants plant themselves upon the doctrine of this Court as stated by JUDGE ALVEY, in *B. & O. R. R. Co. v. Brydon*, 65 Md. 225, 226, and claim that the rights of Wm. L. Winans, under the contract at bar, are conclusively settled in his favor by that case. There, an action was brought by the vendor upon a contract for delivery of a large quantity of coal of such quality as should be satisfactory to the railroad's master of transportation and master of machinery. After delivery of a portion had been made, the railroad refused to receive further deliveries, because the officials named pronounced it unsatisfactory. The Court ruled, that if this objection was not made in good faith, the action could be maintained, and the plaintiff had a verdict and judgment, which judgment, on appeal, was affirmed by this Court. On a motion for reargument the motion was overruled, JUDGE ALVEY using the following language :

" In cases where it is stipulated that an *article* to be furnished shall, unqualifiedly, be satisfactory to the party to whom it is to be supplied, the right to *reject the article*, as not being satisfactory, cannot be inquired into ; but the party's own determination must be taken as final and conclusive   *   *   *. It is quite permissible to parties to enter into such contracts, and where the approval or satisfaction of the party is made a condition precedent to the right to receive compensation, or the contract price, for the article to be delivered, the Court has no power or right to dispense with the condition, and say that the article was of a quality or character that ought in reason to have been accepted as satisfactory. If the plaintiffs think proper to enter into such conditional contract, it is not for any one else than the defendant to say that he ought to be satisfied; that is a matter expressly reserved to the defendant to decide for himself, and the reasons or motives for the decision, whether reasonable or unreasonable, good

or bad, are placed by the contract beyond question or investigation. For instances of this class of contracts, and as illustrations of the application of the principle here stated, I may refer to the cases of *Andrews* v. *Belfield*, 2 C. B. (N. S.), 779; *McCarren* v. *McNulty*, 7 Gray, 139; *Brown* v. *Foster*, 113 Mass. 136; *Zaleski* v. *Clark*, 44 Conn. 218; *Rossiter* v. *Cooper*, 23 Vt. 522; *Hart* v. *Hart*, 22 Barb. 606; *Gibson* v. *Cranage*, 39 Mich. 49; *Wood Reaping Co.* v. *Smith*, 50 Mich. 565."

An examination of the cases cited by JUDGE ALVEY, above, discloses that they all relate either to the manufacture or furnishing of some article, or the rendering of some service involving personal taste, feeling or judgment, such as the painting of a portrait, the execution of a statue or bust, the making of a suit of clothes, or a lady's dress, the manufacture of a book-case designed to harmonize with other house furnishings, the sale of a riding or driving horse, the use of a reaping machine, or similar instances. In all such cases, as in the case of coal for steaming purposes, there can be, we think, no doubt of the correctness of the principles declared by JUDGE ALVEY, but we have been referred to no case in which these principles have been applied to the title of land, and we do not think it follows from any of the cases cited, that they would be so applied. In the recent case of *Pennington* v. *Howland*, in the Supreme Court of Rhode Island, 41 At. Rep. 891, where suit was brought to recover the contract price for a portrait painted of defendant's wife, many of the cases cited by JUDGE ALVEY, with others, were reviewed, and the Court, in discriminating the cases which do from those which do not stipulate for personal satisfaction as distinguished from satisfaction as to quality, workmanship and other like considerations, says: " If one agrees to sell land with a satisfactory title, and shows a title valid and complete, the parties must have intended such a title to be satisfactory, rather than to leave an absolute right in the purchaser to say ' I am not satisfied,' when no reason could be shown why he was

not satisfied." So in *Fagen v. Davison*, 2 Duer, 153, it was said: "A title which is required to be satisfactory to the party by whom it is to be received, means a title to which there is no reasonable objection, and with which the party ought to be satisfied. Such a title he is bound to accept." And in *Lord v. Stephens*, 1 Younge & Collyer, 222, the the clause in question, was: " In case the title shall not be satisfactory to the said Richard Stephens, these presents shall be void to all intents and purposes," and LORD AB-INGER held that the purchaser could make no other than the usual objections. But without attempting to decide whether the title to land is excluded from the operation of the rule under consideration, it is to be observed that in *Bry-don's case*, as in all those like it, the question was whether the defendant could be required to *accept and pay for* the article in question, when he had stipulated he should not be required to do so, unless it was satisfactory to him—in other words, whether there was any enforceable contract at all, if the article was not satisfactory to him. In such case his dissatisfaction with the article avoided the contract, and both parties were released from its obligations. But in the present case, the question is not whether there is an en-forceable contract, but *when* it was to be performed by the parties, and what duties were by it imposed upon each in its performance. Wm. L. Winans never repudiated the contract or declared he would not perform it. On the con-trary, he steadily maintained his right to retain the purchase, though he failed to indicate to the plaintiffs the grounds of his dissatisfaction with the form of deeds tendered without execution, but with his assent for examination in ample time for completion of the purchase before the date fixed by him for that purpose. He stood in his lifetime, and his execu-tors stand now, upon the technical defence that *executed* deeds were not tendered for his examination, and that this was a condition precedent to the expression of his satisfaction or dissatisfaction, and to payment of the purchase money. But when plaintiffs wrote him Sept. 6th, 1895, suggesting

that the form of the deeds might require some time to arrange to his satisfaction, and that he authorize some one to prepare such form, he replied on Nov. 12th, 1895, " If you desire to commence drafting the documents required by my offer for passing the title, and submit them to Mr. Lanahan's examination, and then to me for my examination, whether I find them satisfactory, I have no objection to your doing so." At this same time he sent to Mr. Lanahan copies of deeds accepted by him in a previous purchase from another person of a one-tenth interest in these same properties, to be followed by plaintiffs in drafting their deeds, and they were so followed by them, and those drafts were forwarded to him for his examination, and were received by him Jany. 6th, 1896, nearly two months before the date fixed by him for delivery of the deeds and payment of the purchase money. Had he replied to plaintiffs' letter of Sept. 6th, 1895, that only *executed* deeds could be tendered for his examination, and had he then directed his attorney to prepare the deeds (that being the duty of the vendee in the absence of special agreement), or had he authorized plaintiffs to prepare them, it would then have been their duty to tender such *executed* deeds for examination, as a condition precedent to demand of the purchase money on the day fixed for its payment. Perhaps, even, when he received the unexecuted deeds Jany. 6, 1896, if he had then returned them, and insisted upon their execution, before submission for examination, he would have had the right to do so. But he did neither. On the contrary, he acknowledged their receipt Feby. 14th, 1896 ; stated he was then examining them, and would write to Mr. Lanahan and to plaintiffs concerning them after such examination. Here, then, is a plain and unequivocal waiver of the right to have executed deeds submitted for his examination, and we are thereby relieved from the necessity of further considering this aspect of the case. The unexecuted drafts of deeds having been prepared in exact conformity with the forms sent by him for that purpose, it would have been idle to

execute and submit duplicates—which could not be satis-
factory, if those in his possession were unsatisfactory—and
it would have been equally idle to execute and submit deeds
not conforming to those which he had sent to be followed.
By his course of dealing in preparing and forwarding forms
to be followed, he had in effect declared in advance his ap-
proval of those forms, if correctly followed, and for any
errors therein, occasioned by himself or his agents, the plain-
tiffs could not be held responsible nor be visited with any
loss arising therefrom.

The fourth clause of the offer of purchase provides that
" the sale, giving up, and conveyance, assignment and trans-
fer, shall be executed and completed by you, and all others
necessary on the part of the estate of DeWitt Clinton
Winans, as stipulated in this letter, *within six months there-
after (that is, from Aug. 31st, 1895);* and the consideration
of $126,000, which I have by this letter offered to pay for
said two shares, shall be paid to you, or to your order, *at
the time of delivery to me, and my acceptance as satisfactory,*
of the documents required for the completion of said sale,
giving up and conveyance." By the true construction of
this contract, everything to be done by either party thereto,
was to be done on or before Aug. 31, 1895. If the plain-
tiffs had failed to tender for examination executed deeds
within that period, *and no waiver of this requirement had
been made,* Wm. L. Winans could not have been required
to take the property and pay the purchase money, and if
executed deeds had been tendered Jany. 6th, 1895, when
the unexecuted drafts were submitted under the waiver we
have found, he would have lost his arbitrary right of rejec-
tion because of mere dissatisfaction, upon failure to declare
such dissatisfaction within the six months; and thereafter,
he could have relied upon none other than ordinary and
reasonable objections. To hold otherwise would be to
destroy the mutuality which must characterize every fair
and rational contract, and which we think is apparent upon
the true construction of the contract before us.

Moreover, Mrs. Williams' petition, which is under oath, states that she had directed her counsel to take proceedings for the partition of the real estate, so that her interest therein, when thus set apart, could be sold and made productive of income, and that the prospect of the sale to Wm. L. Winans, though at what she considered a low valuation, induced her to forego these proceedings and consent to the sale to him.   In corroboration of this statement by her, and as independent proof of Wm. L. Winans' knowledge of the situation in this regard, the fifth clause of his proposition states that "the offer made by this letter is made with the view, amongst other considerations, of *preventing any proceeding* in Court, or elsewhere, concerning the partition or division of the Ferry Bar property, or the sale of all, or any part of it,   *   *   *   and that in event of any proceedings, in Court or elsewhere, by Mrs. Williams, or any one else, for the partition of the Ferry Bar property, or the sale of, or any part thereof, I reserve the right, if I choose, to terminate all proceedings for the purchase under this letter, and such termination by me shall render null and void all that may have been previously done hereunder."

It was entirely reasonable that proceedings for partition or sale should be prohibited for the six months stipulated during which each party was bound by the contract, but to bind the life-tenants *indefinitely*, after the expiration of the six months, and after Wm. L. Winans, upon his theory, was no longer bound to take the property, would be to inflict upon them a wrong which cannot be justified by any rule of law, or by any sound reasoning.   By the course of Wm. L. Winans, in waiving the tender of executed deeds for examination, and in receiving in lieu thereof unexecuted drafts, in promising from time to time to examine the drafts submitted, and to advise whether they were satisfactory—and in delaying and neglecting for nearly two years to comply with these promises, he practically obtained the control and possession of the life-estate in this property—and if he is now discharged from liability for interest on the purchase money,

the life-estate, to that extent, will be appropriated by him in disregard of the contract and without compensation. By his conduct the conditional sale provided by the contract was made absolute upon the principle applied in *Delameter* v. *Chappell,* 48 Md. 244. This principle is clearly recognized in the recent case of *Pistel & Ridgaway* v. *Imperial Mutual Ins. Co.,* 88 Md. 552, in which JUDGE BOYD discriminates the cases in which the defendant gets the plaintiff's property and then wilfully refuses to pay for it, from those in which the approval or satisfaction of the purchaser is a condition precedent to the acquisition of possession and control by the defendant, as well as to the acquisition by the plaintiff of the right to recover compensation, or the contract price. And we think that Wm. L. Winans had no more right, under this contract, to affirm, as he did, " a binding bargain and sale," after March 1st, 1896, and yet withhold interest on the purchase money, than a purchaser who had obtained actual physical control of the subject of the contract, and had dealt with it as his own, would have had to refuse payment and tender back the thing purchased.

This view is sustained by the authority of Mr. Sugden, who says in vol. 2, p. 314 (*Sug. Vend.*): "A purchaser is entitled to the profits of the estate from the time fixed for completing the contract, whether he does, or does not, take possession of the estate, and as from that time the money belongs to the vendor, the purchaser will be compelled to pay interest for it, if it be not paid at the day. If the delay in completing the contract be attributable to the purchaser, he will be obliged to pay interest on the purchase money from the time the contract ought to have been carried into effect, although the purchase money has been lying ready and without interest being made of it." The same rule is laid down in *Pomeroy on Contracts,* sec. 429; and in *Steenrod* v. *W. P. & B. R. R.,* 27 W. Va. 15, it is said: " If the vendee would escape the payment of interest on the purchase money, even when the delay in the payment is caused by the default of the vendor, he must actually set aside the

money, and appropriate it for the vendor, and must notify him of these facts and that the money is thus lying idle." To the same effect also is *Calcraft* v. *Roebuck,* 1 Vesey, Jr., 221.

Upon the whole case, we are of opinion that, upon waiver by Wm. L. Winans of the tender of executed deeds for examination, and the receipt of unexecuted drafts tendered for that purpose with his assent, he was bound to signify before March 1st, 1896, his satisfaction or dissatisfaction therewith, so as to enable the plaintiffs either to execute at once the drafts, if found satisfactory, or to correct any errors pointed out and to execute corrected deeds before March 1st, 1896 ; and that the delay thereafter in the execution and delivery of corrected deeds was wholly due to the default of Wm. L. Winans.

We are also of opinion that all the loss and damage occasioned thereby should be borne by his estate, and that the proper measure of such loss and damage is interest at the rate of six per cent. per annum upon the purchase money from March 1st, 1896, to date of payment, March 14th, 1898, together with the taxes paid by plaintiffs on the property, and which have become chargeable to it since March 1st, 1896.

The decree of the Circuit Court will be reversed and the cause remanded that a decree may be passed in conformity with this opinion.

> *Decree reversed, with costs above and below, to the executors of De Witt Clinton Winans, and cause remanded.*

(Decided June 22nd, 1899).