## DEVOINE COMPANY, INC., *v.* INTERNATIONAL COMPANY, INC.

*Sale of Goods—"Quality Satisfactory"—Good Faith in Rejection—Action by Seller—Measure of Damages— Unfinished Goods.*

When a contract refers any question of performance to the decision of one of the parties thereto or of a third party, the decision contracted for is final, but if the person to whom the question is submitted decides, not on that question, but on some question of interest or advantage not made the basis of rights or obligations by the contract, the decision is outside of the contract and is given no effect by it.          pp. 693, 694

In such a case, it being made clear that the tendered performance meets the test stipulated for, as being satisfactory or sufficient, as the case may be, a rejection on the ground of dissatisfaction or insufficiency is ineffectual.          p. 694

On a sale of goods, "quality satisfactory" to the buyer, the buyer's honest decision that they are unsatisfactory must be accepted, however mistaken or unreasonable it may appear, but the seller may prove that the rejection of the goods was because the buyer had found a cheaper source of supply, and having proved rejection for that reason, the seller may take the rejection as a breach of contract, and recover his damages.

p. 696

The seller may introduce evidence of a wide range to prove a reason for the rejection outside of the contract, and incidentally prove a high quality in his goods.          pp. 695, 696

Evidence as to the high quality of the goods sold, of expressions by the buyer of satisfaction with former deliveries under the contract, and of statements by the buyer that he had made other arrangements for his supply of such goods and therefore could not use the undelivered portion of the goods contracted for, *held,* in spite of contradictory evidence on the buyer's behalf, to require submission to the jury of the question of good faith in rejecting the goods as not satisfactory.          pp. 696, 697

When goods, wrongly rejected by the buyer, are made up, ready for delivery or marketing without the expenditure of a material amount of labor or expense, the seller's loss is taken to be the difference between the contract price and the price to be obtained on the market or the current price, or, in the absence of any market or current price, the difference between the seller's cost and his selling price under the violated contract.   p. 698

When the goods are not made up, ready for delivery and marketing, and a material amount of labor or expense is necessary on the seller's part to make them so, his loss by reason of the wrongful rejection is taken to be the difference between the contract price and the cost to him of obtaining his raw material and making the goods up for delivery.   pp. 698, 699

In so far as the absence of a market or of any reasonable possibility of making a resale of the goods rejected may be necessary to determine the damages, this is a question for the jury, if the evidence in regard thereto is conflicting.   p. 699

In an action for the buyer's breach of his contract for the purchase of prepared cherries, it appearing that the seller, who imported green cherries and prepared them, had at the time of the breach a large stock of cherries, both raw and finished, from which he delivered the finished product to such customers as might first call for deliveries, and that hence the ultimate effect of the buyer's breach was to leave on the seller's hands so many barrels of cherries not made up, it was proper to consider the cherries yet to be delivered as unfinished, and as requiring expense and labor to finish them, so as to justify an instruction that the measure of damages was the profit which the seller would have made had the contract been fully performed.   pp. 699, 700

*Decided January 11th, 1927.*

Appeal from the Superior Court of Baltimore City (DUKE BOND, J.).

Action by the International Company, Inc., against the Devoine Company, Inc. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, AD-
KINS, OFFUTT, DIGGES, and PARKE, JJ.

*Richard B. Tippett,* with whom were *Richard B. Tippett
& Sons* and *Derby A. Lynch* on the brief, for the appellant.

*John M. Lyell,* with whom were *Sadtler & Lyell* on the
brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

In this case a buyer of goods appeals from a judgment
against it in favor of the seller, for damages from an alleged
breach of the contract by the buyer's refusal to receive fur-
ther deliveries after delivery of part.

On February 8th, 1924, the appellee sold to the appellant,
a manufacturer of candies, under a written contract for the
sale, 400 barrels, of 50 gallons each, of cherries in syrup,
"quality satisfactory," at specified prices, and, on November
26th, 1924, after 97 of the 400 barrels had been delivered,
the appellant refused to receive any more and declared that
the quality of goods delivered was not satisfactory. The
appellee, the seller, in the regular course of its business, pur-
chased green cherries in Italy, where they were grown, in
amounts calculated to meet the demands for its product, and
imported the cherries preserved in brine or sulphur. At its
factory or place of business in Baltimore City, the cherries
were put through a process which removed the brine or sul-
phur, and after that through further processes of boiling,
coloring and flavoring; and were then sorted and put up in
syrup. Thereafter they were shipped out to the customers
as the customers called for them. The Devoine Company, one
of the customers, put such cherries up in candies, in its
factory in Baltimore. At the trial of the suit below, the
seller produced evidence to prove that the buyer's repudiation
of the contract for further deliveries was not due to a con-
clusion on the buyer's part that the cherries were unsatisfac-
tory in quality or condition, but to its preference of a plan

by which it would get its supply at a lower cost.   Declarations to that effect by the president of the Devoine Company were testified to, and evidence of high quality was offered by the seller and received in evidence.   The buyer, on the other hand, produced evidence to substantiate its declaration that the quality of the cherries was unsatisfactory.

The exceptions bring up three principal questions for review.   The first is that of the construction of the contract clause, "quality satisfactory."   The buyer contends that this referred all question of continued acceptance of the cherries to its unrestrained choice, and that there could not properly be any inquiry into the reasons or motives for its decision, such as the trial court permitted.   The seller, on the other hand, contends that the decision of the buyer had no effect on the contract if it was not rendered as a *bona fide* decision as to its satisfaction with the goods delivered.   And the trial court adopted the latter view, and admitted evidence and instructed the jury accordingly.   A second principal question is one of the legal sufficiency of the evidence to prove any such lack of good faith in the refusal of the goods.   And the third principal question is as to the correctness of the measure of damages adopted.

Taking up the first question, that of the construction and effect of the provision, "quality satisfactory," we assume there can be no doubt that this means of a quality satisfactory to the buyer.   The arguments proceeded upon that assumption.   Contracts referring questions of quality or measure to the decision of a party or his agent have been construed by this court in several cases in the past, and it seems to us that as a result of the discussions and decisions in those cases we have a definite, clear principle of construction, and one that is in harmony with the best of later authorities elsewhere.   *Lynn v. Balto. & O. R. Co.,* 60 Md. 404; *Balto. & O. R. Co. v. Brydon,* 65 Md. 198; *Latrobe v. Winans,* 89 Md. 636; *Goldberg v. Feldman,* 108 Md. 330.   When parties to a valid contract refer any question of performance to the decision of one of them, or of a third person, the decision

contracted for is final. "To substitute for it the opinions and judgments of other persons, whether judge, jury or witnesses," said Judge Miller, in *Lynn v. Balto. & O. R. Co., supra,* "would be to annul the contract, and make another in its place." And Williston (1 *Williston, Sales,* sec. 191) says it would be "an arbitrary refusal by the court to enforce the contract that the parties have made, and seems unwarranted." But it is only the decision contracted for that is final. If the question referred does not arise, as if a title to be accepted as satisfactory should turn out to be clearly free from question, then a decision which pretends to be upon that question might have no effect. *Goldberg v. Feldman, supra.* And in those cases in which there may be a question open to decision, if the person to whom it is referred decides, not on the question submitted, but on some question of interest or advantage not made the basis of rights or obligations by the contract, the decision is outside of the contract and is given no effect by it. Apart from any possible difficulty in proof, and assuming it to be made clear in any case, as, for instance, by a clear admission to that effect, that the tendered performance did meet the test stipulated for, that it was satisfactory or sufficient, as the case might be, a rejection on the ground of dissatisfaction or insufficiency would be beyond the right of the party who is to approve, in bad faith, and ineffectual. The appellant urges suggestions made in the separate concurring opinion filed in *Balto. & O. R. Co. v. Brydon, supra,* page 226, at the time of the overruling of the motion for reargument, that when a party to the contract is himself to be satisfied, there can be no inquiry into the reasons or motives for his rejection, but that when a third person, even the party's agent, is to be satisfied, his rejection is valid only if made in good faith. That view of the law was not adopted by the Court in the Brydon case, and although urged in later cases has not been adopted in any one of them. And it is not accepted generally in other courts. 1 *Williston, Sales,* sec. 191. It may be added that if the suggested distinction had been adopted, it is not clear that it would ever have given any

greater freedom to a corporation buyer, which must always act by agents.

It is, furthermore, settled by our decisions that on the issue of good faith in rejection of performance the evidence may take a wide range, and facts such as the appellant sought to elicit in this case against objections of the appellee should be admitted. In *Balto. & O. R. Co. v. Brydon, supra,* coal bought by the company was required to be of a quality satisfactory to its master of transportation and master of machinery, and after part had been delivered, acceptance of any further deliveries was refused because these agents had condemned the coal delivered as unsatisfactory, and in that case the seller, suing for a breach of the contract, offered evidence to prove expressions of satisfaction by the agents, and deliveries of coal of the proper grade, and that the rejection was due to some objection made to the coal by steamers, and to a reversal of the company's choice between this grade of coal and another. The Court, page 220, said: "Certainly they were not obliged to accept coal if they thought it was not fit for the uses contemplated by the contract; neither on the other hand would they be justified in rejecting it for the reason that it did not possess qualities, which at the time of the contract it was known by the parties that it did not possess. By the terms of the contract the whole decision was committed to them; if they made their decision against the coal in good faith, the defendant would not be obliged to accept it, but if they fraudulently rejected it, their judgment would be without effect in law, and the defendant would not be excused by it. We on this point refer to *Lynn's Case,* 60 Md. 404, and approve and adopt it. On the question of fraud, it was proper that the evidence should take a wide range. * * * It was proper to show whether the coal fulfilled these expectations, and whether the officers who were to decide on its rejection knew, or had the means of knowing, its quality, and whether there were any circumstances which might induce them to make an unjust decision in the interest of the defendant. It was proper also to prove acts, declarations or

statements of these officers which would show what opinion they really had of the merits of this coal."

In the case at bar, the question referred to the buyer by the clause "quality satisfactory" concerned a supply of food-stuff, to be put up for an exacting trade, and seems clearly enough one on which there would be room for judgment and choice. And an honest decision by the buyer of that question of satisfactory quality must, according to the principles stated, be accepted, however mistaken or unreasonable a judge or jury might consider it. On the other hand, as only the decision of that question must be accepted as final, the seller was at liberty to prove, if he could, that his goods were re-jected not because the quality was unsatisfactory, but because the buyer had found a cheaper source of supply, and having proved rejection for that reason, the seller was not bound to accept it, but could take it as a breach of contract, as he has taken it, and recover his damages. He was at liberty to intro-duce evidence of a wide range tending to prove such a reason outside of the contract, and incidentally to prove a high qual-ity in his goods. He accordingly introduced testimony that of the 97 barrels of cherries delivered on the contract before refusal of further deliveries, none were rejected, and there was no complaint. Testimony was given of careful selection and putting up of the cherries in the seller's factory, and of a quality up to the highest grade known to the trade. A letter written by the buyer during the progress·of deliveries, and expressing satisfaction, was read in evidence. It had been used by the seller as an advertisement. Further testi-mony was given to the effect that calls from this buyer for deliveries slackened to such an extent as to cause the seller some inconvenience, and that when the president of the seller company called on the buyer, the president of the latter ex-plained, first, that his own sales had slackened, and, later, that he had an arrangement for putting up his own supply of cherries, and, therefore, could not use the undelivered por-tion of the International Company's cherries, but would try to dispose of them to other consumers. Two letters followed

from the International Company to the Devoine Company on a suggestion for deliveries in small instalments, and these were answered by the final letter from the Devoine Company, stating that as the International Company's president had previously been informed, the Devoine Company found the cherries unsatisfactory and would take no more. This evidence was met by contradictory testimony on behalf of the Devoine Company, but no exception brings that up for review. Our conclusion is that the evidence of the International Company just outlined was relevant to prove a rejection for reasons other than dissatisfaction with the cherries (*Balto. & O. R. Co. v. Brydon, supra*), and that it was sufficient, no matter how strong the evidence of the Devoine Company may have been to the contrary, to require submission to the jury of the question of good faith in making the rejection. These conclusions dispose of the exceptions on the more important rulings on admissibility of evidence, and the rulings on all the prayers except that relating to the measure of damages if the jury should find for the plaintiff.

As to the measure of damages, the trial court instructed the jury that it was "the profit which they shall find, from the evidence, the plaintiff would have made, if the contract had been fully performed by the plaintiff, and the jury may, in their discretion, allow interest on said sum." This was the measure adopted in *Dimmick v. Hendley,* 117 Md. 458, 471, and substantially that adopted in *Balto. & O. R. Co. v. Brydon,* and *Lynn v. Balto. & O. R. Co., supra.* The Sales Act (article 83, section 85, sub-sections 3 and 4, Code P. G. L.) does not state the rule in these words. Sub-section 3 provides that when there is an available market for goods rejected by a buyer, the ordinary measure shall be the difference between the contract price and the market or current price of the goods; and sub-section 4, providing for cases in which labor or expense of material amount are necessary on the part of the seller to enable him to fulfil his obligations under his contract, limits the buyer's liability to such damages as the seller would have suffered if he did nothing towards carrying out his contract after the buyer's breach, and

adds that "the profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages." But Professor Williston, who drew the Uniform Sales Act, considers that this latter section states the general doctrine of the common law of the United States, and neither section seems to us to change the common law rules applicable to a case such as the present one.

The appellant, buyer, insists that this is a case for the application of the measure of difference between contract price and market price, or that if it is not clear that it is such a case, then neither is it clear that it is a case for the allowance of manufacturer's profit, and for want of sufficient evidence to fix the measure of damages, only nominal damages should have been allowed. In the alternative, the appellant contends that at least there was a question of the existence of the facts requiring damages to be measured by profits lost, and that this question should have been submitted to the jury.

The questions thus raised are to be answered, then, according as the facts in the record show whether the goods sold and to be delivered were or were not made up ready for delivery and for marketing, and if made up, whether there was a market for resale, and a market or current price to be compared with the contract price. *Kingman & Co. v. Western Mfg. Co.,* 92 Fed. 486, 490. When goods rejected are made up, ready for delivery or marketing, without the expenditure of a material amount of labor or expense, then the seller's loss is taken to be the difference between the contract price and the price to be obtained on the market or the current price. *Dimmick v. Hendley* and *Balto. & O. R. Co. v. Brydon, supra; Todd v. Gamble,* 148 N. Y. 382. If there is no market, and consequently no market price or current price to be obtained, the loss is taken to be the difference between the seller's cost and his selling price under the violated contract. *Puritan Coke Co. v. Clark,* 204 Pa. 550, 563. When, on the other hand, the goods are not made up, ready for delivery and marketing, and a material amount of labor or expense is necessary on the seller's part to make them so, his loss is again

taken to be the difference between the contract price and the cost to him of obtaining his raw material and making the goods up for delivery. *Eckenrode v. Chemical Co.,* 55 Md. 59, 61; 2 *Williston, Sales,* p. 1433. In this case, the seller's cost and the contract price were conceded, and the seller, on the trial, directed his proof, on the measure of damages, mainly to establishing absence of a market or any reasonable possibility of making a resale of such a large quantity as three hundred and three barrels of cherries, during several months following the buyer's refusal to receive them. There was conflicting evidence on that fact, however, and so far as the fact might have been necessary to the measure of damages adopted, the court should have left it to be ascertained by the jury, instead of assuming it in the prayer. On appeal, however, emphasis is placed by the appellee on the other ground for allowing the manufacturer's profit on his contract as the measure of damages, the ground that the goods were not made up, ready for resale, and that a material amount of labor or expense would have been necessary to make them so. The evidence is not explicit on this point. It appears that the cherries were obtained from Italy from time to time, and made up to meet the demands of the customers. The president of the appellee company, the seller, testified that it was impossible to state definitely what quantity was on hand at the time of this buyer's repudiation, because no inventory of stock was taken at just that time. He supposed that there were 500 barrels of all kinds of cherries in his place of business, or sufficient either in process, raw or finished. What was on hand then, is uncertain. And another uncertainty arises from the fact that no cherries that may have been finished were sold to this buyer particularly, but were intended for delivery to whatever customers might first call for deliveries. As to any portion of the goods sold to this customer which might have been ready for resale, the measure of seller's damages would have been the difference between contract price and market price, assuming there was an available market; and if some had been made up and some remained to be made up, two measures should have been used.

*Dimmick v. Hendley, supra.* Here deliveries were to be made chiefly in future finished goods; and as the allocation to this one buyer of any that might have been finished already appears to have been a matter of chance, depending upon his calling for them first, and as the effect on the seller of the one buyer's breach of contract would, in the end, have been to leave on the seller's hands just so many barrels of raw cherries, not made up, it seems to this court that the trial court might appropriately consider all the goods yet to be delivered as unfinished and necessitating a material amount of labor and expense to finish them, so that the manufacturer's profit would be the correct measure of the seller's loss. We see no error, therefore, in the ruling adopting this as the measure of damages.

Several exceptions to incidental rulings on evidence are not fully covered in the discussion so far, but none of them seem to justify further discussion. We find no error in them.

*Judgment affirmed, with costs to the appellee.*