## COURT OF APPEALS, JUNE TERM, 1800.

### PEARCE *et al. vs.* WALLACE *and* MUIR.

A bond deliver-ed to a creditor to be collected, and the amount ap-plied to the dis-charge of so much of the debt due to him, is not to be credited as a pay-ment, unless the money is received; and there is no *laches* on the cre-ditor unless the bond is assigned to him, or he has express directions to proceed to recover the money. The changing of a sterling money debt into currency, at 170 exchange, is equitable and proper. When a sterling money debt is changed into currency, 6 per cent interest is to be allowed. A draft for sterling money is to be credited at the rate of exchange at the time of the draft.

APPEAL from a decree of the court of chancery dismissing the bill.    The bill states, that on the 29th of September 1785, the complainants, (the present appellants) entered into a bond to the defendants, in the penal sum of 5,600*l* sterling money, conditioned for the payment of the balance due to the house of

*Wallace, Johnson and Muir,* merchants in London, for goods had of them by *John Voorhees* & Co. in the year 1784; that the complainants, on the 29th of September 1785, entered into another bond to the defendants, in the penal sum of 7000*l* sterling money, conditioned for the payment of whatever might be the amount of the goods and charges on them which *John Voorhees* & Co. had of the said house of *W. J. & M.* in the said year 1785, which said last mentioned goods were to be paid for agreeably to a contract entered into between the said house and the said *John Voorhees* & Co. That suits have been brought upon the said bonds, and judgments entered against the complainants for the penalties thereof, without specifying the sums for which the judgments should be released. That on the 4th of October 1787, *John Voorhees,* on account of *John Voorhees* & Co. assigned unto the defendants a bond of a certain *Daniel Charles Heath,* on which bond there was due from the said *Heath* to the said *Voorhees,* at the time of the assignment, the sum of 357*l* 9*s* 9*d* current money, which sum the defendants have not credited the account of the said *Voorhees* & Co. though the defendants have ever since the assignment held, and still do retain the said bond. That in the account of the defendants against the said *Voorhees* & Co. they have charged the exchange at 70*l* on the 100*l,* when it ought, agreeably to the custom and usage among merchants, to have been charged at 66*l* 13*s* 4*d* on the 100*l* sterling. That the defendants have charged the said *Voorhees* & Co. six per cent. interest on the money due them on the goods purchased for them, when by a stipulated agreement in writing between the defendants and *James Pearce,* they were to charge only five per cent. interest in any sum which might remain unpaid at the expiration of the term of credit obtained from the tradesmen. That very considerable payments have been made on each of the said judgments, and the defendants claim a balance due them on the 20th of November 1792, of 2339*l* 13*s* 3*d,* with interest from that day, when agreeably to the

June 1800

Pearce
vs.
Wallace & Muir.

complainants accounts, there is not due 1000*l.* current money. It concludes with a prayer for general relief, and for an injunction, &c.

The agreement above referred to in the bill, as having been entered into by *James Pearce,* one of the partners of *John Voorhees* & Co. with the defendants, is "that the goods ordered by Mr. *Pearce* are to be purchased for him by *Wallace, Johnson and Muir,* of London, on a commission of 5 *per cent.* and are to be laid in for him on the best terms they can be had for, on the usual credit, for which goods he is to pay in 12 months from the date of the invoice, in cash or good bills of exchange. He is to be allowed 5 *per cent. per annum* interest, on any sum he may place in the hands of the house of *W. J. & M.* before his goods become due, and he is to pay 5 *per cent. per annum* interest on any sum which may remain unpaid at the expiration of the term of credit obtained from the tradesmen. He is to be credited with all drawbacks and debentures which may be allowed."

The *answers* of the defendants admit the agreement, referred to by the bill, respecting interest at the rate of 5 *per cent. per annum,* but they expressly allege, that the reason of that agreement was founded upon the idea, well understood at the time it was made by the said *Pearce* and the defendants, that the debt so to be contracted by the said *Voorhees* & Co. was to be contracted with the house of *W. J. & M.* in London, and the payments thereof to be made to the said house in London. And they further allege, that the exchange between America and London is generally much higher than sixty-six and two thirds *per centum,* and seldom so low as 170*l.* currency for 100*l* sterling. They also allege, that it is much more convenient and advantageous to a debtor to have the privilege of paying his debt in this country, than to be compelled to remit his payments to London, by which great delay, and often great loss is sustained. And that antecedent to an agreement between the said *Voorhees* and the defendants, and to the stating of the account herein after more particularly mentioned, in

pursuance and in consequence thereof, if the said *Voorhees* & Co. had made any payments of bills of exchange to the defendants, the same would have been remitted to London, and would not have been passed to their credit until paid in London; and if they had made payments in current money to the defendants, the same would have been credited in their accounts in London, three months after said payments, (that period being allowed for the passage and sight of bills,) at the exchange, at which bills of exchange might be purchased here at the time of such respective payments in current money, and so the said *Voorhees* & Co. well knew the said payments were to be received by the defendants, and to be thus credited in their account with *W. J. & M.* of London. And they further allege, that if such current money payments were to be credited in sterling, at the time they were respectively made, at the rate of 166*l* 13*s* 4*d* current money for 100*l* sterling, they would lose more than their whole commission for buying and shipping the said goods, and transacting the business, as by a particular account of the rates of exchange at the periods of such respective payments, herewith filed, will appear. That to avoid the delay and risk of remitting the payments to London, and also to avoid the difficulty of procuring bills of exchange to make said remittances, which the said *Voorhees* & Co. were from their situation at George-town, in Kent county, obliged to resort to Annapolis, Baltimore or Philadelphia, to purchase, and finding the prices of bills, particularly at Philadelphia, usually higher than the prices demanded by the defendants, the said *Voorhees* & Co. repeatedly applied to them, after they had contracted the said sterling money debt payable in London, to turn the said sterling money debt, so contracted in London, into current money, and that they the said *Voorhees* & Co. might be permitted to make payments of the same to the defendants, who then resided, and still reside in Annapolis, or to some person for their use in Philadelphia, or Chester-town in Kent county, which they the said

*Voorhees* & Co. represented as suiting them still better than making payments in Annapolis, and which they also stated would facilitate them in making large and speedy payments; and that with a view to accommodate the said *Voorhees* & Co. and not with a view of profit, the defendants did consent to change the said sterling debt into current money, and to give the said *Voorhees* & Co. the advantage of making the payments to them in the current money of this state. That in pursuance of the said agreement, the said *Voorhees* did pay sundry sums of current money to *R. T.* of Chester-town, in Kent county, for the use of the defendants, and did also, in pursuance thereof, pass sundry bills or notes, &c. &c. and that afterwards, on the 25th of August 1789, the defendants, and the said *Voorhees,* on behalf of himself and his partner, accounted together in current money of and concerning the debt so contracted by them with the house of *W. J. & M.* of London; and of the sundry payments then made in discharge of the same, and upon such account the said *Voorhees* & Co. were found in error and indebted to the said *W. J. & M.* in the sum of 7033*l* 11*s* 10*d* current money, which account, and the balance so struck, the said *Voorhees,* on behalf of himself and company, then and there admitted to be justly and truly stated, and the said balance to be due to the said *W. J. & M.* That in the said account there is a charge of 6803*l* 11*s* 4*d* sterling money, which is extended in currency at 70 *per cent.* exchange, and the same was so done, because the said sterling money was then due and payable in London; that bills of exchange were then at seventy-two and one half *per cent.* and if the said *Voorhees* & Co. had made their payment of the said sterling debt in London, the same could not then, and could not now be paid, and when paid, the defendants believe they shall not be able to remit at 70 *per cent.* and that the said sterling was so turned into currency at the said exchange of 70 *per cent.* with the consent and approbation of the said *Voorhees.* The defendants admit that they have charged the said *Voorhees* & Co. interest at the rate of six *per cent.*

*per annum*, which they apprehend, and are advised they are well justified in claiming, inasmuch as the said debt due from the said *Voorhees* & Co. by their solicitation and consent, has been made a current money debt, and payable in this state, to the defendants, for the ease and convenience of the said debtors, and as the defendants have also taken upon themselves the trouble and risk of remitting the same to London, the said debt, since the nature of it has been thus changed, ought to bear the legal interest of this state where the change was made, and where the said debt has, by such change, become payable. That they considered the agreement to pay 5 *per cent.* wholly annulled and done away from the time they agreed to change the said sterling debt, payable in London, into a current money debt payable in this state. That in the account stated and signed as aforesaid, 6 *per cent.* interest is calculated, which was examined, &c. by the said *Voorhees*, and by him admitted, &c. They admit that the bond of *D. C. Heath*, &c. was lodged with them, and that *Voorhees* & Co. has not been credited therefor, because they deny it was received *as a payment*—that it was never legally *assigned* to them, but put into their hands to collect, and when received, to be credited. That when requested by *Voorhees* & Co. so to do, by letter, suit was commenced, and the writs renewed to several courts, but that *Heath* was never arrested, and the suit was discontinued by the counsel employed by the defendants, they finding it fruitless and expensive to renew the same. That the account above stated to have been settled and signed by the said *Voorhees*, was long *after the said bond* was lodged for collection as aforesaid, and the said *Voorhees*, if he had supposed the same was delivered as a *payment*, would have insisted on its *being credited*, &c.

The case thus depending on the bill, answers and exhibits, the parties entered into the following agreement, viz. "The chancellor, it is agreed, shall by an interlocutory order, direct the auditor to state the account between the parties upon the following points:

1st. The debt of *Heath*, if it is *to be credited* or not.

2d. Upon the changing of the debt from sterling into currency *at 70 per cent. exchange.*

3d. Upon charging six *per cent.* instead of 5 *per cent.* which the complainants insist on.

4th. The charging interest on money *three months* after the payment is made.

5th. At what *rate of exchange* a sterling debt, credited on the 14th May 1790, ought to be extended in current money.

It is submitted, whether there ought to be a discrimination between the cases of the principals and the securities." [Some of the complainants were the securities in the bonds executed by *Voorhees* & Co. to the defendants herein first stated.]

Hanson, Chancellor, (February 8, 1796,) being connected with one of the defendants, conceived it improper for him to decide this cause. He therefore requested *Philip Barton Key,* Esquire, (one of the solicitors of the said court,) to examine the papers in the cause, to consider the arguments of the counsel, which were filed in writing, and to give *him* thereon his opinion in writing.

Mr. *Key* afterwards delivered in writing his opinion as follows, to wit:

"In compliance with the request of the chancellor, I have examined the bill, answer and exhibits, filed in the case of *Pearce & others, vs. Wallace & Muir,* and the observations of counsel on each side, and I am of opinion, on the five points submitted as the grounds of an interlocutory order, to direct the auditor in stating the account,

1st. That *Heath's* bond ought *not to be credited* as a payment, and that the same should be re-delivered to the complainants.

2dly. That the change of the sterling debt into currency at 170 *exchange,* is equitable and proper. I not only think so, because *Voorhees,* the acting partner, has signed *a stated account* without *objecting to such extension,* but because there *is proof* to shew that it is rather *below the rate of* exchange at the time the debt ought to have been paid. If therefore the com-

plainants sought indulgence, it ought not to be at the expense of the defendants. If the complainants had been at that time in possession of specie to discharge the debt, would it not have taken 170*l* current money to have purchased bills to have discharged 100*l* sterling in London? If so, and such is the *proof adduced*, they ought not to complain. My ideas on this case are founded on a conviction that it *originally* was the clear intent of all parties, that *Voorhees* & Co. were to pay *W. J. & M. in London,* for the goods shipped to them. This appears to me evident from all the transactions between them, and the subsequent change was, with the consent and approbation of the parties, intended as an *ease* and *accommodation* to *Voorhees* & Co. In the course of my practice, I have always thus extended a sterling debt at the current rate of exchange, when I have taken a security for it. I know it to be the practice of *W. J. & M.* and I believe it to be the *usage of trade.* If it is not so, merchants in London, who ship goods to this country on credit, must be ruined; for if exchange is low, the debtor buys bills, and ships to a profit; if it is high, he pays money at *sixty-six and two thirds* to a factor or partner here, who must either lay out the money in bills to remit at a great loss, or keep the money till bills fall, and thus lose the interest and risk his credit. To prevent this *the shipper* is induced to make the debt payable *in London,* in which event he never risks the exchange, but receives the sterling amount in London. I therefore think the change of the debt from sterling into current money, at 170*l*, reasonable and proper, it being *with the consent,* and for the *ease and accommodation* of *Voorhees & Co.*

3dly. That the auditor should charge an interest of *six per cent.* from the date of the *change* of the debt into *current money,* as then the complainants had the privilege of paying the debt in *this country.* Upon the ground of the original contract, only five *per cent.* interest could be charged, because the debt was contracted in England *to be paid in London.* The facts are simply these—*W. & M.* of Maryland, of the house

of *W. J. & M.* of London, undertook *for a commissi-on,* that their London house should ship a certain a-mount of goods to *Voorhees* & Co. which they *W. J. & M.* must take up of the manufacturers in England on a certain credit, and if they fail in punctual pay-ment, with an interest of *five per cent. Voorhees* & Co. were to have 12 months credit, and to pay five *per cent.* if not punctual; that is, they were to have the goods on the terms that *W. J. & M.* took them up, and to give a certain commission for buying and ship-ping them, which was the *only profit W. J. & M.* were to have for the risk they incurred, and delay of pay-ment. A subsequent contract entered into with *W. & M.* of Maryland, permitted *Voorhees* & Co. to pay off the debt due *W. J. & M.* of London, to *W. & M.* of Maryland, *in this country;* and in virtue of this sub-sequent contract, upon principles of equity and jus-tice, I think they ought to pay *six per cent. from that time;* because the contract or permission to pay in this country, with an interest of six *per cent.* was *more beneficial to them,* than to pay the debt in Lon-don with an interest but of five *per cent.* By the *custom of trade,* remittances to London only operate as *payments,* when the money is there *actually receiv-ed,* and as three months *must* elapse between the pur-chase of bills, and their payment in London, the loss of interest on these *three months is greater* than pay-ing the debt in this country with an interest of *six per cent.* The conduct of *Voorhees* & Co. buying bills of *W. & M.* in this country, to remit to *W. J. & M.* of Lon-don, in part payment of the goods, is unequivocal evi-dence of their ideas of the original contract; and as the subsequent change, the privilege of paying in this country, even with six *per cent.* was for *their benefit,* had they made use of it, of course they ought not to complain; and if they neglected this benefit, by not paying at all, they have still less reason to complain; besides, coming here for relief against a judgment at law, they ought to shew a *clear equity,* which they do not in this instance appear to have.

4thly. If any interest is charged on any sums of money after they were paid, *since* the change of the debt *into current money*, it is improper, and ought not to be allowed. If such a charge exists on any sums paid *here*, while the debt remained a *sterling debt* payable in *London*, I think they ought not to be relieved against it if not exceeding *three months.*

5thly. The sterling draft on the 14th of May 1790, ought to be credited at the rate of exchange on *that day*, because it was *subsequent* to the contract enabling them to pay in this country, and of course ought to be extended, in as much current money as it would *then bring if sold here*. I do not discover any reason or principle to discriminate between the principal and securities in this case. I think *they* are equally liable, unless they could shew *fraud, imposition*, or *improper conduct* between *Voorhees* and the defendants, in the settlement or statement of the account. I do not conceive them *concluded* by the acts or acknowledgments of *Voorhees*; at the same time I cannot perceive, in this transaction, any superior equity in their favour."

HANSON, Chancellor, (February 29th, 1797,) approving *entirely* of the opinion of Mr. *Key*, ordered the auditor to state and return an account, &c. on the principles of that opinion. Which having been done by the auditor, the chancellor confirmed the report, and dissolved the injunction which had been granted, stating the sum that *should be levied* on the executions on the judgments at law. The complainants appealed to this court, and the cause was argued by

*Martin*, (Attorney General,) and *Winchester*, for the Appellants, and by

*Cooke, Key*, (a), and *Shaaff*, for the Appellees.

THE COURT OF APPEALS, at this term, *affirmed* the decree of the Court of Chancery.

(a) Mr. Key was not counsel in the court of chancery.