OSCAR VON LINGEN ET AL., EXECUTORS, *v.* SAFE DEPOSIT & TRUST COMPANY.

[No. 59, January Term, 1929.]

*Decided June 25th, 1929.*

358

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*David Ash,* with whom was *John C. Kump* on the brief, for the appellants.

*R. E. Lee Marshall,* for the Safe Deposit & Trust Company, appellee.

PATTISON, J., delivered the opinion of the Court.

This is the second time this case has been before this court. It originated in the equity court of Baltimore City, where a bill was filed by the executors of Catherine Marie Von Lingen, of Bremen, Germany, asking for the return of an alleged overpayment made by them to Charles W. Field, executor of his wife, Alberta L. Field, a resident of Baltimore City at the time of her death, and one of the nieces and residuary legatees under the will of Catherine Marie Von Lingen.

The facts contained in the bill, and those upon which the plaintiffs relied for relief, are fully stated in the opinion in the former case. *Von Lingen v. Field,* 154 Md. 638.

The equity court of Baltimore City refused the relief sought and dismissed the bill. From that action of the court the case reached this court on appeal, and the decree of the lower court was reversed, and the case remanded for further proceedings.

The alleged overpayment resulted from the transfer, made on the 15th day of February, 1917, to the estate of Mrs. Field, an American legatee, by the executors of her aunt, Miss Von Lingen of Germany, of certain American securities, at that time appraised and valued at $20,000, equivalent, at the rate of exchange then current, to 117,001 German marks. It may be here stated that each of the other residuary legatees

received advancements, amounting to 12,875 marks, before any distribution was made, though the record does not show when these advancements or prepayments were made.

On the 1st day of November, 1919, a distribution was made by the executors of Marie Von Lingen among all her residuary legatees, in which the distributive share of Alberta L. Field was charged with the value of the American securities as of the time of their transfer, in German marks, at the rate of exchange current at the date of the distribution, though it was shown by the record that, between the time of the transfer and the date of distribution, these American securities had greatly appreciated in value, when valued in the depreciating German currency.

Judge Urner, speaking for the court in the former case, said: "The fundamental question in this case is whether the share" of Alberta L. Field "should be charged in the final settlement with a large intervening appreciation of the American assets as valued in the depreciating German currency." In discussing this question, Judge Urner said: "In view of the continuing fall in the value of the German mark, it is evident that, with respect to the distribution of the estate of Marie Von Lingen, time was a highly important factor. An equality of distribution could not be accomplished unless equal payments were made to all of the legatees at the same periods, or unless the results of any variation from that method were equalized in the final accounting. It would have been manifestly unfair to discriminate permanently among the legatees in regard to prepayments, since the value of the shares would be materially affected by the time of their receipt. To give such an ultimate advantage to the American legatee, as against her German cousins, by the delivery to her of securities here of stable value, at a period when the funds or assets in Germany were declining in consequence of the great war in which that country was engaged, and in which our nation has not yet become involved, would have been particularly unjust. It is clear that the advancement in 1917 on account of Mrs. Field's share, if not subject to later adjustment, gave

her a much more valuable portion of the estate than that received by any of the other distributees. Whether the value of the estate as a whole be measured in marks or in dollars, the advantage from a premature and unqualified payment is equally apparent. The American stocks and bonds delivered on account of Mrs. Field's share in 1917, at a valuation of 117,000 marks, would have been worth nearly six times that amount in marks if they had been retained for the estate until the time of the general distribution in 1919. In comparison with the current values, at the payment periods, of the shares received by the German legatees, the advancement on Mrs. Field's share was unquestionably excessive. * * * The fall of the mark between the time of the advancement and the period of general distribution, because of the war and its consequences, was in effect a proportionate destruction of the estate's value. * * * If the large disparity which actually resulted from the advancement on that legatee's share is not subject to the adjustment attempted by the executors, the principle of equality which the testatrix sought to apply in the disposition of her residuary estate is rendered inoperative. The executors would have no authority thus to favor one of the legatees, and, in the final account to which the receipt for the American securities referred, they have endeavored, in accordance with their duty, to prevent such a preference."

The court, in its decision in the former case, approved of the method employed by the executors in their treatment of the advancement made to Mrs. Field in ascertaining the distributive share to which she was entitled in the final distribution of the German estate, though at the conclusion of the opinion it said: "The information obtainable from the record does not enable us to determine definitely the extent of the plaintiffs' rights or of the defendants' liabilities," and for such reason the case was remanded for further proceedings.

After filing the opinion, a motion for reargument was filed, in which it was suggested that the German mark may have had a much greater value at the time of the advancements to the other legatees than it had at the time of the distribution, for which reason such legatees, like Mrs. Field, should have

been charged with the value of the advancements at the time when made, which was not done. In response to this motion, the court, in a memorandum filed at the foot of the opinion, said that such suggestion was not "inconsistent with the opinion which stated the inability of the court, upon the information obtainable from the records 'to determine definitely the extent of the plaintiffs' rights or the defendants' liabilities.' " For that reason the case was remanded for further proceedings and proof.

Upon the remand of the case, no evidence was taken as to the value of the German mark at the time the advancements were made to the German legatees. The only evidence appearing in the record is that taken as to the value of the American securities, in American money, at the time of the distribution in 1919, made two years and eight months after their transfer, when, as shown by the evidence, their value had declined from $20,000, or thereabouts, at the time of their transfer, to $13,543 at the time of the distribution. This evidence was offered in support of the contention, made for the first time in this case, that it was the value of the securities, $13,543, at the time of the distribution, and not their value of $20,000 at the time of the transfer, that should have been considered and used in ascertaining the amount of the distributive share of Mrs. Field at the date of the distribution.

The only question, therefore, presented by this appeal is: Which of these values shall be considered and used for the above stated purpose?

That we may properly answer this question, we will consider all the facts and circumstances in connection with the advancement so made to Mrs. Field, and decide therefrom the intention of the parties in respect to the question here presented.

As alleged in the bill and admitted by the defendants, both in their answer and in the stipulations thereafter made by the parties, Mrs. Field on the 4th day of October, 1916, through her husband, requested the executor of Miss Von Lingen "to pay her an advance on her distributive share in

the estate of Miss Von Lingen, and proposed to take over on account thereof, *at market value,* such shares of stocks and bonds, belonging to the estate, as were then held in custody by A. Schumacher & Co." of Baltimore City, Md. On November 23rd, 1916, while Mrs. Field was still living, "said executors consented to make an advance as requested by Mrs. Field, to the extent of twenty thousand dollars on condition that such advance should operate as a charge *against her,* against *her estate* and against *her distributive share* in the estate of Miss Von Lingen." On December 8th, 1916, Mrs. Field died leaving a last will and testament, in which is found the following provision: "I give and bequeath to my beloved husband, Charles W. Field, absolutely and forever, all moneys belonging to me, in my possession, or deposited in bank, whether such deposit be in my name or in our joint names, also *all moneys due and payable to me by anyone* or *from any source whatever."* Mr. Field was appointed executor and to him letters testamentary were granted upon the estate of his wife. On February 15th, 1917, A. Schumacher & Co., complying with directions received from the executors of the will of Miss Von Lingen, delivered to Charles W. Field, as executor of the will of Mrs. Field, the American securities hereinbefore mentioned, for which Mr. Field, as executor of his wife, gave to the executors of Miss Von Lingen, the following receipt:

"I, Charles W. Field, executor of the last will of Alberta Luise Field of Baltimore, Maryland, do hereby admit that I have received from Dr. Eberhard Noltentius, executor of the last will and testament of Marie von Lingen of Bremen, Germany, the sum of twenty thousand dollars ($20,000), equal in German money at the current rate of 68⅜ths to one hundred and seventeen thousand and one mark and eighty-three pfennigs (Mk. 117001 83/100) as a partial payment on account of the legacy given to said Alberta L. Field under the last will and testament of said Marie Von Lingen. It being understood that said Eberhard Noltenius, executor, shall hereafter pay to me, said Charles W. Field, executor, the balance remaining due

to the estate of said Alberta L. Field under her said
legacy from said Marie Von Lingen, as soon as the
estate of said Marie Von Lingen is finally settled, and
the balance remaining due to said Alberta L. Field is
ascertained. It being further understood that in the
event the above *amount already* paid to me shall upon
final settlement of said estate of said Marie Von Lingen
be shown to be more than the total amount of the
legacy due to said Alberta L. Field, then I am to repay
the said Noltenius, executor of Marie Von Lingen
whatever amount has been paid to me over and above
the full amount due to said Alberta L. Field, or her
estate, from the estate of said Marie Von Lingen."

The advancement promised by the executors of Miss Von
Lingen to Mrs. Field was regarded, it seems, as embraced in
the bequest made to her husband under the terms used "all
moneys due and payable to me," and in his administration
account Mr. Field, as her executor, charged himself with
said advancement, using this language:

"Received of the executor of Marie Von Lingen on
account of legacy due to said Alberta L. Field, prior
to her death, being money due to her at and prior to
her death, plus $8.75 interest, $20,008.75."

And in the same administration account he distributed to
himself this amount, and referred to and described it in
practically the same language as that mentioned above, with-
out naming or referring to said American securities.

The securities after their transfer became the absolute
property of the estate of Mrs. Field and were subject to sale
or disposal at any time thereafter. In the receipt of Mr.
Field, as executor, he acknowledged the receipt of $20,000,
and in that receipt it was understood that the executors of
Miss Von Lingen were to pay him the balance remaining due
to his wife's estate when finally settled and the amount of
such balance ascertained, but if that amount, expressed there-
in "as already paid," should be found at the final settlement
of the estate to be more than his wife was entitled to as

legatee, then he was to repay the executors of Miss Von Lingen the difference between the amount to which she was entitled and the amount, $20,000, received by him as executor.

It is shown, from the facts and circumstances stated, that the transaction mentioned was not a mere transfer to Mrs. Field of said securities, to be thereafter distributed to her in the final distribution of the estate, at whatever they, at such time, might be worth, but, we think, it is clearly shown from the request of Mrs. Field, the transfer of the securities to her estate by the executors of Miss Von Lingen, the receipt of Mr. Field as executor of his wife's will, and his treatment of the advancement in the administration of his wife's estate, that it was fully understood and agreed by Mrs. Field, Charles W. Field, her executor, and the executors of Miss Von Lingen, that such advancement was, in effect, a prepayment to her estate of $20,000, with which she was to be charged as legatee in the final distribution of the estate of Miss Von Lingen.

In the former case, the counsel for the defendants, or appellees therein, contended that the estate of Alberta L. Field should only have been charged with the value of the American securities, $20,000, at the rate of exchange current at the time of the transfer, that is, with 117,000 marks, when, in the distribution of the German estate, made by the executors of Miss Von Lingen on November 1st, 1919, she was charged with the value of said securities, $20,000, at the rate of exchange current at the date of distribution, at which time the German mark had greatly depreciated. This court, in the rejection of the defendants' contention and in its approval of the method of distribution employed by the executors, throughout its opinion emphasized the necessity of equalization in the distribution of the German estate among all the residuary legatees, saying, as we have already quoted, that "an equalization of distribution could not be accomplished unless equal payments were made to all of the legatees at the same periods, or unless the results of any variation from that method were equalized in the final

accounting," and that it was "clear that the advancement in 1917, on account of Mrs. Field's share, if not subject to later adjustment, gave her a much more valuable portion of the estate than that received by any of the other distributees." The adjustment therein referred to had reference only to the question there presented, whether, in the final distribution, the estate of Alberta L. Field should be charged with the value of the securities, $20,000, at the rate of exchange in German marks at the time of the transfer or at the rate of exchange at the time of the distribution. It had no reference to any adjustment at the time of the distribution, by which the legacy of Mrs. Field should be charged, for the securities, with a sum less than that agreed upon by the parties at the time of their transfer, for at the time of the decision there was no intimation of any depreciation in the value of the securities. It was not, we think, contemplated by this court that an equalization was to be made in disregard of the express agreement that the legacy of Mrs. Field was to be charged with $20,000, the market value of the securities at the time of the transfer. There was at the time of such transfer a fixed amount in the minds of the parties with which the legacy of Mrs. Field was to be charged, and this amount was not to be affected either by the appreciation or depreciation in value of the American securities in American money. It would seem to follow that, if Mrs. Field's legacy was to be charged only with the depreciated value of the securities at the time of the distribution, she would, if their value was greater at that time, be chargeable with such appreciation. This could not have been the intention of the parties, when, by the agreement, Mrs. Field's estate, in the event of her share in the German estate being less than $20,000, was to pay only the difference between that sum and the amount of her ascertained share. She was not by that agreement to pay the difference between the share to which she was entitled and a larger sum caused by the appreciation of the securities.

It has been suggested that, if the American securities were not disposed of by the estate of Mrs. Field, or those

succeeding her in title, and were held by them at the time of the distribution, then, in ascertaining the share to which Mrs. Field was entitled, the depreciated value of the securities at the time of the distribution should be considered and used, but if it were found that these securities had been sold at an earlier period, then the amount to be considered and used, for the purpose above stated, should be the amount at which they were sold. This was not the express intention of the parties, nor is it we think a logical deduction to be drawn from the facts and circumstances of the case. Whether her estate held the securities and profited by a rise in the market, or lost in a shrinkage of their value, was of no concern to the other residuary legatees, and they should not, in our opinion, be affected thereby.

It is, we think, upon the facts of this case, the value of the securities in American money at the time of the transfer and not their value at the time of the distribution that should be used and considered in the ascertainment of the amount of legacy to which Mrs. Field is entitled.

The lower court, in its decree, adopted the contention of the defendants, and the amount of overpayment thereby decreed to be paid by the defendants to the plaintiffs was ascertained upon the use of the value of the American securities in American money at the time of the distribution and not at the time of the transfer. In so doing, the court, we think, erred, and we will reverse its decree. In the further proceedings for which the case will be remanded, any advantage which the German legatees may have derived from advancements on their legacies prior to the general distribution of November 1st, 1919, should be ascertained and considered for the purpose of the equalization intended by our former and present decisions in this case.

In the prior opinion, after stating that the residue of Mr. Field's estate, which received under his wife's will the advancement on her share of the Von Lingen estate, had been distributed under Mr. Field's will to his brother, W. R. Mason Field, who was not personally served with process, but as a nonresident defendant was only constructively

notified of the suit by an order of publication, we said that, while the executors of Mr. Field's will were exonerated, and in fact were not sued, because the claim on his agreement to refund was not presented before the administration of his estate was completed, yet the legatees under his will were not exempted from liability to contribute proportionately to the payment of the claim, if there was no laches in its presentation. That expression in regard to proportionate contributions was intended to refer to the legatees personally served with process in this suit, and leaves unaffected the question as to their right to claim reimbursement from Mr. Field's residuary legatee.

> *Decree reversed with costs, and cause remanded for further proceedings.*

---

PARKE, J., filed a concurring opinion as follows:

The writer concurs in the conclusion of the majority of the court, which requires from the ultimate beneficiaries of the partial distribution made to Alberta L. Field an accounting upon the basis of the receipt by her as legatee of $20,000 in securities from the executors of Catherine Marie Von Lingen, no matter what may be the later fluctuation either of the dollar as a unit of value or of the securities transferred by the executors. The same rules should prevail with respect to the legatees living in Germany who, before a final distribution, also received from the executors certain German securities, at their then current market value in marks, as a partial distribution of the estate in which they were equal residuary legatees with Alberta L. Field. The opinion, however, declares that "any advantage which the German legatees may have derived from advancements on their legacies prior to the general distribution of November 1st, 1919, should be ascertained and considered for the purpose of the equalization intended by our former and present decisions in this case." I dissent from this statement, if it be intended to announce a different rule of accountability for the German legatees

than for the American legatee. There does not seem to be any substantial reason to support such a distinction. Upon principle and authority both the German and American legatees, who have received securities or money in anticipation of their respective distributive shares in the estate of Catherine Marie Von Lingen (a) should be charged as of the time of their delivery (b) with the then current market price in dollars or marks, accordingly as the securities may be either American or German, and the legatees will discharge any overpayment on account of their shares in dollars or marks respectively. These several amounts, however disparate the rate of exchange may be at the time of a general distribution of the estate, will then be translated into some common denominator as dollars or marks, the shares of the legatees ascertained, and a balance struck, after charging every one of the legatees with the marks or dollars respectively received on account of the portions delivered by them in advance of the distribution of the estate (c). Since the obligation is to pay or account in dollars or marks, the amount payable or chargeable in dollars or marks is neither increased nor diminished by the fall or rise in value of the securities delivered in kind or of the currency in which settlement is to be made, because fluctuations in the value of the currency of a country or of the securities as expressed in terms of the currency at time of their transfer are normal, and therefore contemplated, and, unless provided against by stipulation, do not change the amount of the liability of those who are bound to pay or discharge obligations in such currency, but the debt or obligation will be discharged by paying or accounting for the nominal amount due in such currency, no matter how appreciated or depreciated at the time of settlement the particular currency or securities may be. *Infra.*

(a) *American etc. Co. v. Scrimger,* 130 Md. at 393; *Donaldson v. Raborg,* 28 Md. 56; *Woerner on Administration* (3rd Ed.), secs. 579, 566; *Crean v. McMahon,* 106 Md. 507; *Clarke v. Sandrock,* 113 Md. 422; *Evans v. Iglehart,* 6 G. & J. 171; *Williams v. Holmes,* 9 Md. 281. (b) *Gosnell v. Flack & Hoffman,* 76 Md. 426; *Woerner on Administration*

(3rd Ed.), sec. 564; *Hoffman v. Armstrong,* 90 Md. 130; *Manning v. Thurston,* 59 Md. 218; *Smith v. Donnell,* 9 Gill, 84. (c) *Woerner on Administration* (3rd Ed.), secs. 333, pp. 1100, 1101, sec. 522; *Glasgow v. Lipse,* 117 U. S. 327; *Jackson v. Chase,* 98 Mass. 286; *Scott v. Dorsey,* 1 H. & J. 227, 229, 232, 233; *Costigan v. Sewall,* 6 Gill, 232; *Ballo. & O. R. Co. v. State,* 36 Md. 519, 539-542; *Chesapeake Bank v. Swain,* 29 Md. 483-498; *State v. Stump & Gilpin,* 2 H. & McH. 174; *Pearce v. Wallace & Muir,* 1 H. & J. 48.

---

URNER, J., filed the following dissenting opinion.

In expressing, on the former appeal in this case, our approval of the principle of equalization applied by the executors of the will of Catherine Marie Von Lingen, of Germany, in their final account, we assumed, in the absence of any evidence to the contrary, that the American securities transferred to the estate of Alberta Louise Field, on February 15th, 1917, at their market value then of $20,000, or 117,000 marks, were of that value at the time of the general distribution, on November 1st, 1919, of the German estate. The opinion referred to those securities as being of "stable value," and said, in view of the later decline in the dollar value of German marks: "The American stocks and bonds delivered on account of Mrs. Field's share in 1917 at a valuation of 117,000 marks would have been worth nearly six times that amount in marks if they had been retained for the estate until the time of the general distribution in 1919. In comparison with the current values, at the payment periods, of the shares received by the German legatees, the advancement on Mrs. Field's share was unquestionably excessive." After the case had been remanded for further proceedings and proof to the end that a decree might be passed in accordance with the principles stated in the opinion, it was proved that the securities transferred to Mrs. Field's estate in February, 1917, at a valuation of $20,000, were worth only $13,503 on November 1st, 1919, when the Ger-

man executors made the general distribution with respect to which the legacies were to be equalized according to our former decision. The question now presented is whether the intervening decline in the value of the American securities should be considered for the purposes of the equalization heretofore approved. The lower court answered that question in the affirmative, and the executors of the Von Lingen will have appealed.

In the opinion delivered on the former appeal we said: "A reasonable construction of the receipt given by Mrs. Field's executor, for the securities delivered in pursuance of her request, supports the theory that the final accounting to which it referred was intended to take into consideration the element of time as affecting the relative value of the assets advanced." The transaction mentioned in the receipt was thus definitely regarded as a qualified advancement and not as a sale. The considerations justly requiring an equalization as of the general distribution period were stated, in part, as follows: "In view of the continuing fall in value of the German mark, it is evident that, with respect to the distribution of the estate of Marie Von Lingen, time was a highly important factor. An equality of distribution could not be accomplished unless equal payments were made to all of the legatees at the same periods, or unless the results of any variation from that method were equalized in the final accounting. It would have been manifestly unfair to discriminate permanently among the legatees in regard to prepayments, since the value of the shares would be materially affected by the time of their receipt. To give such an ultimate advantage to the American legatee, as against her German cousins, by the delivery to her of securities here of stable value, at a period when the funds or assets in Germany were declining in consequence of the great war in which that country was engaged, and in which our nation had not yet become involved, would have been particularly unjust. It is clear that the advancement in 1917 on account of Mrs. Field's share, if not subject to later adjustment, gave her a much more valuable portion of the estate than that received

by any of the other distributees. Whether the value of the estate as a whole be measured in marks or in dollars, the advantage from a premature and unqualified payment is equally apparent. * * * The fall of the mark between the time of the advancement and the period of general distribution, because of the war and its consequences, was in effect a proportionate destruction of the estate's value. If the general distribution had been deferred until the time of the final accounting in 1924, the cash assets of the estate, of which it mainly consisted, would have been practically valueless, and the shares of the other residuary legatees would have been of insignificant value as compared with the portion which the American distributee had obtained. If the large disparity which actually resulted from the advancement on that legatee's share is not subject to the adjustment attempted by the executors, the principle of equality which the testatrix sought to apply in the disposition of her residuary estate is rendered inoperative. The executors would have no authority thus to favor one of the legatees, and, in the final account to which the receipt for the American securities referred, they have endeavored, in accordance with their duty, to prevent such a preference."

Since the sole occasion for charging the American legatee's share of the Von Lingen estate with overpayment was the subsequent depreciation of the German estate, and since the value, on November 1st, 1919, of the estate then and theretofore distributed, was to be the basis of the equalization which the executors applied and this court approved, it does not seem to me equitable that an intermediate decline in the value of the transferred American assets should be disregarded in applying the equalization principle, unless they were sold by the recipients at the advancement valuation. If, on November 1st, 1919, they were still held by testamentary successors to Mrs. Field's title, whose liabilities in regard to the proposed reimbursement would be no greater than her own, I think it would be unjust to charge them with more than the securities were then worth as against a claim for overpayment which is based upon a decrease in the value of

the German assets to that date. In the final account by which the overpayment was ascertained, and equalization provided, the shares of Mrs. Field and other legatees were charged with interest on the amounts of their advancements to the date of that accounting. The rule of equality invoked and adopted in this case, under its exceptional circumstances, requires in my opinion that the advancements should be estimated with reference to the actual benefits which accrued from them, at or before the equalization period, to the respective legatees, or their successors in right and liability. The record does not show whether the securities advanced at Mrs. Field's request were still held on November 1st, 1919, by any of the parties sought to be charged in this reimbursement suit, nor is there any evidence to prove the extent of any advantage realized by the German legatees from prepayments which they received, the possibility of which was considered on a motion filed after the decision on the former appeal was rendered. For these reasons I favor a remand of the case for further proof, without an affirmance or reversal of the decree.

Judge Adkins requests me to note his concurrence in the view I have expressed.